# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| SILVER SHIPS, INC., | ) |
| Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 17-0404-CG-N |
| LOUIS T. CODEGA, P.E., an individual, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant, Louis Codega's ("Codega") Motion for Partial Summary Judgment and brief in support thereof (Docs. 38 and 39), Plaintiff's opposition thereto (Doc. 41), and Defendant's reply (Doc. 44). For the reasons explained below, the Court finds that Defendant's motion for summary judgment should be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff, Silver Ships, Inc. ("Silver Ships") filed its Complaint on August 9, 2017, in the Circuit Court of Mobile, Alabama alleging three causes of action against Defendant: Architectural Malpractice, Breach of Contract, and Breach of Warranty for a particular purpose. (Doc. 1-2). Defendant removed this action on August 8, 2017 (Doc. 1) and thereafter, filed a Motion to Dismiss Counts I and II of the Complaint (Doc. 2). The Magistrate Judge assigned to this action recommended that Defendant's motion be granted, and the undersigned adopted the Report and Recommendation (Doc. 18) on November 17, 2017. (Doc. 27). Subsequently, on December 15, 2017, Plaintiff filed a motion for leave to amend its complaint (Doc. 32) which was denied on August 10, 2018 (Doc. 43). As a result, the only claim remaining in this action is

1

Count II for breach of contract which is the subject of Defendant's Motion for Partial Summary Judgment and brief in support thereof. (Docs. 38 and 39).

The undisputed facts giving rise to this action are as follows:

In 2015, Codega and Silver Ships entered into an oral contract whereby Codega would design two vessels for Plaintiff. The first vessel, F47200 (the "Southampton"), was for the South Hampton New York Fire and Rescue Squad and was to be used by South Hampton's harbor police for recovery efforts. (Doc. 1-2 at 6). The second vessel, N47700 was to be designed by Codega and built by Plaintiff for USACE, Philadelphia ("Corps vessel"). (*Id.*) For each vessel design, the parties had a series of discussions regarding the customers' specifications and usage requirements. (*Id.*) Codega provided Plaintiff with the design for each vessel and Silver Ships built the vessels for each of its customers.

In January 2016, the Southampton was sea trialed twice. (Doc. 39 at 3). The first sea trial revealed a list to the port (left) side while the boat was underway. (Doc. 39 at 3). Silver Ships corrected the problem by widening the chines to increase dynamic stability. (*Id.*) The Southampton was then sea trialed a second time before being shipped to Southampton, New York. (*Id.*) Upon delivery of the Southampton, the customer, with Plaintiff present, tested the vessel and determined that the vessel did not operate properly for its intended use due to static instability. (Doc. 1-2 at 6). Plaintiff notified Codega of the stability problem and Codega offered suggestions for a solution, but according to Silver Ships, after further testing it was determined that the problem could not be fixed.[1] (*Id*. at 7). As a result, Silver ships built a

---

[1] Codega asserts that the suggestion he made to correct the stability concerns were not explored by Silver Ships. (Doc. 44 at FN 5 and 14) This factual dispute, however, does not change the analysis herein below.

second vessel, at its own expense, that met the usage requirements. (*Id.*) The second vessel was accepted by the customer. (*Id.*)

In September 2016, the Corps vessel was sea trialed and exhibited problems with maneuvering instability and non-compliance with Coast Guard contract requirements for flotation instability which resulted in Silver ships, at its own expense, re-designing and re-building a second vessel for the Corps.[2]

Defendant's motion seeks summary judgment on the breach of contract claim only as to the Southampton vessel. Defendant additionally seeks summary judgment as to its counterclaim whereby Codega claims that Silver Ships owes him $47,085.50, subject to any equitable set-off to which Silver Ships may be entitled, for design work Codega performed on other vessels which are not the subject of any dispute. (Doc. 39 at 11-13). Plaintiff filed its Response (Doc. 41) on August 3, 2018, and Defendant replied on August 18, 2018. (Doc. 44). This matter is now fully briefed and ripe for review.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there

---

[2] The specific problems with the Corps vessel need not be explained in detail because the subject motion does not seek summary judgment as to the contract relating to that vessel.

must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its

own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Breach of Contract**

Defendant asserts that summary judgment is due to be granted as to the breach of contract claim with regard to the Southampton vessel because it did not breach any material term of the oral contract for the design of that vessel. (Doc. 39 at 8-11). More specifically, Codega argues that no breach occurred because the contract was silent on the issue of stability and left the determination of the stability standard to the discretion of Codega. (*Id.*) As such, pursuant to the oral contract, Codega chose a suitable stability standard (ISO 12217-1 category C), designed a vessel in accordance with that standard, and the vessel ultimately built by Silver Ships complied with that standard leaving no question of fact that Codega did not breach any term of the contract. (*Id.*) Plaintiff on the other hand argues the stability standard chosen by Codega was not suitable for the usage expectations of the client. (Doc. 41, generally). Accordingly, Plaintiff asserts that there remains a question of material fact as to whether Codega used reasonable skill

to fulfill his contractual obligations to Plaintiff when he failed to consider stability requirements such that summary judgment should not be granted. (*Id.*)

In order to prevail on a breach-of-contract claim under Alabama law a Plaintiff must show (1) a valid contract binding the parties, (2) Plaintiff's performance under the contract, (3) Defendant's nonperformance, and (4) damages. *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303 (Ala.1999). Alabama law creates an implied warranty that a contractor will "use reasonable skill in fulfilling his contractual obligations. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish*, 790 F.3d 1173, 1178 (11th Cir. 2015) (citing to *Blackmon v. Powell*, 132 So.3d 1, 5 (Ala.2013) (quoting *Turner v. Westhampton Court, L.L.C.*, 903 So.2d 82, 93 (Ala.2004)). Neither party in this action disputes that an oral contract existed. Defendant, likewise, acknowledges that under the law, he is required to use reasonable skill in performing his contractual obligations (Doc. 44 at 3). Therefore, the only issue before this court is whether there is a dispute of material fact as to whether Codega breach his contractual obligations by failing to use reasonable skill in designing the Southampton vessel.

In support of its motion, Defendant relies on the fact that neither the contract between Silver Ships and Southampton nor the oral agreement between Silver Ships and Codega included any specification or term relating to the Southampton's stability. (Doc. 39 at 4). Without such language, the oral contract required Codega to use his discretion to select an appropriate stability standard on which to base his design, an obligation he undisputedly fulfilled. Codega additionally points out that the Southampton's design was based, in part, on another vessel Codega designed (the Charlotte vessel) which also complied with the ISO 12217-1 category C and which was accepted by Silver Ships and its customer. (Doc. 39 at 11; Doc. 39-2 at 3).

6

Plaintiff does not dispute that its verbal contract with Codega lacked any specification as to a stability standard for the Southampton or that Codega designed the Southampton vessel to meet the stability requirements of ISO 12217-1 standard for category C. (Doc. 41 at 2). However, in support of its position that ISO 12217-1 category C was not a suitable design standard for the mission of the Southampton due to its anticipated use as a rescue vessel, Plaintiff points to several facts which it contends show that summary judgment is not warranted. (Doc. 41 at 4). First, Plaintiff points out that prior to the design of the Southampton, Silver Ships had discussed stability concerns with the Charlotte vessel previously designed by Codega. (Doc. 41 at 9).[3] Second, Silver Ships relies on Plaintiff's admission that he knew the vessel's purpose was for operators to recover persons from the water and his admission via email to Silver Ships after the Southampton was built that "I do not agree with everything in your email, but I do agree with your most important point- that it is my responsibility to design a boat that meet's everyone's expectation and that clearly did not happen here." (Doc. 41 at 4; 44-6 at 2). Third, Silver Ships has produced two affidavits, one from Clay Danielson, the current lead naval Architect for Silver Ships and another from Jason Powers the Director of Business Development for Silver Ships. (Docs. 41-4, 41-5, respectively). Lastly, Plaintiff has provided a video which shows the visible degree of list the Southampton exhibits when its client (via three men) stood on the right side of the boat.[4]

---

[3] The parties dispute whether the design of the Charlotte was the primary starting point for the design of the Southampton. (*See* Doc. 39 at 2-3; Doc. 41 at 4-7).
[4] Only two of them are actually on the boat. A third man steps onto the boat with one foot, but leaves his other foot on the dock and ultimately steps back onto the dock.

Mr. Powers' affidavit states, among other things, that prior to Codega designing the Southampton vessel he discussed the boat's intended mission with Codega and that once the Southampton was built, he discussed with Codega issues regarding the stability of the vessel. (Doc. 41-5). Mr. Danielson, who was designated as a Corporate Representative and as a non-retained expert, states in his affidavit that "[t]he Southampton 25 as designed by Louis Codega does not meet an acceptable standard for stability, either appropriate for its mission or consistent with other boats designed and built by Silver Ships …". (Doc. 41-4 at 3). Mr. Danielson further opined that "[t]he craft as designed by Mr. Codega does not exhibit sufficient stability to fulfill the requirements of a law enforcement patrol boat mission even if it does meet the criteria for ISO 12217-1 for design category C." (*Id.* at 4). Per the affidavit, this opinion was based on Mr. Danielson's review of the facts underlying this action, including emails, photographs, and video footage, the stability characteristics and hydrostatic data for the Southampton 25, and "reliable engineering principles and methods I have applied to the facts of this case." (*Id.* at 2). In explaining his opinions, Mr. Danielson points out that ISO 12217-1 category C does not have a minimum standard for righting energy that must be met and does not provide any criteria against which to gauge initial transverse metacentric height (GM)[5]. (*Id*. at 3).

Appreciating that the only argument set forth by Silver Ships is that Codega failed to use reasonable skill in performing his contractual obligations, Codega's Reply points out that Silver Ships twice sea trialed the Southampton prior to delivering the vessel to its client and did not consider static stability to be a significant problem and twice ignored Codega's advice to remedy the static stability issue by adding ballast to the vessel. (Doc. 44 at 3-8). Codega also asserts

---

[5] GM is a measurement of the initial static stability of a boat. A larger GM implies greater initial stability to overturning. (Doc. 41 at 3).

that the statement he made in an email i.e., that it was his "responsibility to design a boat that meet's everyone's expectation and that clearly did not happen here", is nothing more than a recitation of "the well know platitude that 'the customer is always right.'" (Doc. 44 at FN 13). Further, Codega argues that the Southampton was rejected by the client based on "its own interpretation of an *ad-hoc*, unrecognized test, neither of which had been communicated to Codega in advance." (*Id*. at 8). In that regard, Codega argues that he cannot have breached a material term of his contract because neither Silver Ships nor its client ever communicated to Codega that it wanted the vessel to not exceed a certain degree of list under the circumstances that the client created when testing the vessel, i.e. three men leaning over the right side. (*Id.* at 11-12). Codega, likewise, points out that Silver Ships, even now, has not articulated what degree of list would have been acceptable. (*Id*. at 11).

Codega's arguments with regard to suggesting a remedy after the vessel was built do not negate Codega's responsibility to use reasonable skill in designing the vessel. Rather, the fact that remedies were suggested by Codega implies that a problem was apparent with the stability of the vessel as it was built. This is not to say that evidence of a need for a remedy establishes a breach of contract. However, because the parties do not dispute that the Southampton was built in accordance with Codega's design, a need to remedy a problem with stability in the vessel after it was built is material, albeit not conclusive, of whether the design was reasonable, given the anticipated mission of the vessel. Further, the fact that Silver Ships did not fully appreciate the stability problem prior to delivery of the vessel does not negate that a problem did, in fact, exist. Lastly, Codega's assertion that Silver Ships has not established an alternative standard by which the Southampton should have been designed is not dispositive of Silver Ship's claim. The

9

question before this Court is not whether Silver Ships has established that an alternative standard should have been used, but whether a question material fact exists that ISO 12217-1 category C should *not* have been used. In this instance, a question of fact exists.

There is no dispute that Codega was aware that the Southampton's mission was to perform search and rescue. (Doc. 39 at 2). Accordingly, there is no dispute that Codega was to design a vessel that could be used for that purpose. While the exact standard for stability was left to the discretion of Codega, such discretion does not negate the obligation of Codega to select a standard that would enable the Southampton to perform its mission. While Codega argues that Silver Ships does not offer "any evidence to show that a boat with that stability characteristic [ISO 12217-1 category C] could not properly and safely perform any and every duty the Southampton Boat was expected to perform", it is evident that there was a problem with stability and that the client did not accept the Southampton because of that problem.[6] Video confirms a visible list and Silver Ships has provided testimony via the affidavit of Danielson, a non-retained designated expert that the stability standard selected by Codega was not suitable for the mission of the client. As such, there remains a disputed fact as to the suitability of ISO 12217-1 category C being used for the Southampton and that fact is material to whether Codega used reasonable skill in selecting and designing the Southampton.

**C. Counterclaim**

Codega asserts that because he is entitled to summary judgment as to the Southampton vessel, "there can be no equitable set-off of any claim Silver Ships has against Codega pertaining

---

[6] There is also a dispute as to whether the Codega's design of the dive door further rendered the Southampton incapable of adequately performing its mission. However, as this Court has already determined that a question of material fact exists as to the breach of contract claim, the materiality of that dispute will not alter this Order and, therefore, need not be addressed further.

to Codega's work on the Southampton Boat." (Doc. 39 at 12).  Silver Ships agrees that Codega "did do $47,085.50 worth of design services for work that Silver Ships does not contest. … [but] [b]ecause there are material issues of facts as to whether or not Codega breached his contract with Silver Ships, that right to set-off would be as to both breaches of contract claimed in the complaint." (Doc. 41).  This Court agrees.  Because this Court has determined that summary judgment on the breach of contract claim relating to the Southampton is not warranted, summary judgment on the counterclaim as to any equitable set off based on the contract for the Southampton is, likewise, not warranted.

## CONCLUSION

For the reasons stated above, Defendants' motion for partial summary judgment (Doc. 38) is hereby **DENIED.**

**DONE** and **ORDERED** this 11th day of September, 2018.

/s/ Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE